UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| **KENNETH MCCARTY** | * | **DOCKET NO. 06-0384** |
| **VERSUS** | * | **JUDGE HICKS** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED** and this matter **DISMISSED** with prejudice.

### Background & Procedural History

On April 30 and June 27, 2002, respectively, Kenneth McCarty filed the instant applications for Disability Insurance Benefits and Supplemental Security Income payments. (Tr. 16, 128-130). He alleged disability since June 15, 1993, due to Chronic Obstructive Pulmonary Disease ("COPD"), congestive heart failure, high blood pressure, back surgery, whole body pain, polyps removed from colon in 1994, part of colon removed in 2000, and degenerative disc disease. (Tr. 128, 150). The claims were denied at the initial stage of the administrative process. (Tr. 16, 87, 107-110). Thereafter, McCarty requested, and received a September 11, 2003, hearing before an Administrative Law Judge ("ALJ"). (*See*, Tr. 102). However, in a November 25, 2003, written decision, the ALJ determined that McCarty was not disabled under the Act,

finding at Step Four of the sequential evaluation process that he was able to return to past relevant work as an insurance clerk or cashier. (Tr. 99-106). McCarty appealed the adverse decision to the Appeals Council. On September 24, 2004, the Appeals Council granted McCarty's request for review, vacated the ALJ's decision, and remanded the case for further proceedings. (Tr. 122-124).

A new hearing was held before an ALJ on March 11, 2005. (Tr. 34-74). On April 27, 2005, the ALJ issued a partially favorable decision. (Tr. 13A-33). He found that as of June 27, 2002, McCarty was disabled pursuant to Rule 201.14 of the Medical-Vocational Guidelines. *Id*. However, for the period prior to September 30, 1999, he determined at Step Four of the sequential evaluation process that McCarty was able to return to past relevant work as a cashier/assistant manager of a tobacco store and as a courier/delivery driver for a medical laboratory. *Id*.[1] McCarty appealed the adverse portion of the decision to the Appeals Council. On January 21, 2006, the Appeals Council denied McCarty's request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 6-8)

On March 9, 2006, McCarty sought review before this court. He alleges the following errors:

(1) the Commissioner's finding that McCarty was not disabled prior to June 27, 2002, is not supported by substantial evidence; and

(2) the Commissioner failed to determine that there are jobs available in significant

---

[1] McCarty remained insured for Title II benefits only through September 30, 1999. (Tr. 31). Thus, because disability was not established by that date, McCarty's earliest disability onset date for his Title XVI claim was the application date – June 27, 2002. 20 C.F.R. § 416.335. In other words, the ALJ denied McCarty's application for Disability Insurance Benefits, but granted his application for Supplemental Security Income payments. (*See*, Tr. 33).

2

numbers in the economy that plaintiff could maintain.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act (the "Act"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The Act defines a disability as the

3

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the Act utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the Act.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1)  An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)  An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3)  An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)  If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)  If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

The ALJ determined at Step Two of the sequential evaluation process that McCarty suffered from severe impairments of recurrent major depressive disorder; coronary artery disease status post-percutaneous, transluminal coronary angioplasty; status post-perforated acute diverticulitis with surgical resection; COPD; hypertension; obesity; congestive heart failure; and degenerative disc disease of the lumbar spine, status post-laminectomy. (Tr. 23, 31). However, the ALJ concluded that the impairments were not severe enough to meet or medically equal any of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. *Id*.

The ALJ next determined that as of June 27, 2002, McCarty retained a residual functional capacity for sedentary work reduced by an inability to sustain a normal 40 hour workweek due to the need for two hours of recumbent rest during an eight hour workday. (Tr. 32). For the period prior to September 30, 1999, the ALJ determined that McCarty retained a residual functional capacity to perform light work, reduced by an inability to perform more than frequent climbing, balancing, kneeling, crouching, squatting, crawling, or stooping; and an inability to work in

exposure to moderate levels of gases, dust, fumes, odors, temperature extremes, smoke, or other pulmonary irritants; and a moderately limited ability to understand, remember, and carry out detailed job instructions, maintain attention and concentration, accept instructions and respond appropriately to criticism from supervisors, and to interact appropriately with co-workers and the general public. (Tr. 27-28, 31).[2] Plaintiff seems to challenge the ALJ's residual functional capacity determination for the period prior to September 30, 1999.

At the outset, the court observes that plaintiff did not file for disability until April 2002. At the hearing, McCarty admitted that in 1999 he still hoped to return to gainful employment. (Tr. 62). He said that it eventually reached the point where he had to apply for disability benefits. *Id*. These admissions are consistent with the ALJ's determination that McCarty's condition progressively worsened over the years.

Of particular relevance is McCarty's condition as of September 1999. The record shows that from July until December 1999, McCarty worked as a cashier. (Tr. 163). He worked three to four hours per day, five days per week. (Tr. 166). He frequently lifted less than 10 pounds,

---

[2] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

and occasionally lifted up to 20 pounds. *Id*. Each workday, he walked for one hour, sat for one hour, and stood for two hours. *Id*.

McCarty's medical records from the relevant period further support the ALJ's residual functional capacity. On October 31, 1999, he went to the emergency room with complaints of chest pain. (Tr. 294-295). McCarty had no breathing difficulties, coughing, or wheezing. *Id*. He had no weakness in his extremities. *Id*. He was diagnosed with angina-stable and anxiety. *Id*. A November 2, 1999, x-ray indicated that his cardiac silhouette was within normal limits. (Tr. 296). Pulmonary vascularity was unremarkable. *Id*. Both lungs were clear. *Id*. No effusion was seen. *Id*. There was degenerative disc disease of the thoracic spine. *Id*.

On August 24, 2000, McCarty underwent a physical examination. (Tr. 257-259). He had prior history of diverticulitis in January 1999. *Id*. He denied shortness of breath, chest pain, dizziness, or headaches. *Id*. He denied any paresthesias, paralysis, numbness, or weakness. *Id*. His lungs were clear to auscultation. *Id*.[3]

Plaintiff contends that the ALJ failed to address whether he could maintain employment for a significant period of time. *See, Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). The Fifth Circuit has recently confirmed that remand for a determination of whether a claimant can maintain employment is not required where, as here, during the relevant period: 1) the claimant did not assert that his condition would only periodically preclude him from working, and 2) did

---

[3] In his memorandum, plaintiff seems to argue that the ALJ failed to assign proper weight to the opinions of his treating physicians. (Pl. Memo. pgs.4-5), yet plaintiff did not identify any treating physician's opinion that was purportedly overlooked. Plaintiff did mention the 2002 opinions of two consultative examiners, Thomas Staats and Trung Duong, but the ALJ afforded these opinions significant weight for the 2002 period and beyond. (*See e.g.*, Tr. 28).

not offer medical evidence that his condition would intermittently prevent him from maintaining employment or functioning in the employment context. *Wise v. Barnhart*, 101 Fed.Appx. 950, 2004 WL 1372922 (5th Cir. 2004)(unpubl.).

In sum, there is substantial record evidence to support the ALJ's residual functional capacity assessment.

At Step Four of the sequential evaluation process, the ALJ determined that for the period prior to September 30, 1999, plaintiff's residual functional capacity permitted him to return to his past relevant work as a cashier/assistant manager of a tobacco store and courier/delivery driver for a medical laboratory as these jobs are generally performed in the national economy. (Tr. 29, 31).[4] In reaching his decision, the ALJ relied on the testimony of a vocational expert. (Tr. 66-70).

However, even if plaintiff's residual functional capacity prior to September 30, 1999, had been as recognized by Dr. Duong in 2002, he still would have been able to perform his past relevant work as a medical courier as he actually performed the work. (*See*, Tr. 165).[5] Indeed, as plaintiff performed his job as a medical courier, he worked only two hours per day, and carried a maximum of four pounds. (Tr. 165, 208-213).[6] He walked a total of approximately 155 feet per

---

[4] Beginning on June 27, 2002, plaintiff's residual functional capacity had deteriorated such that he could not return to past relevant work or make an adjustment to other work that existed in substantial numbers in the national economy. (*See*, Tr. 29-33).

[5] Past relevant work is defined as "the actual demands of past work or 'the functional demands ... of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987)(citing, Social Security Ruling 82-61).

[6] Plaintiff worked as a courier for one year (1998-1999). (Tr. 163).

day (no more than 75 feet at one time) and had to get in and out of the car up to three times per day. *Id.*[7] The record also contains evidence that the courier job was performed at the substantially gainful level.[8]

Plaintiff argues that the ALJ failed to determine that there were jobs available in significant number in the national economy. (*See*, Statement of Error 2). However, at Step Four of the sequential evaluation process, the Commissioner is not required to determine whether a claimant's previous work exists in the national economy. *See, Barnhart v. Thomas*, 540 U.S. 20, 124 S.Ct. 376 (2003).

For the reasons stated above, the court finds that the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten**

---

[7] As recently as January 2004, McCarty was able to walk 612 feet in six minutes. (Tr. 405).

[8] Substantial gainful activity is defined as work activity that involves significant physical or mental activities, even if performed on a part-time basis; and work that is accomplished for pay or profit, whether or not a profit is realized. 20 C.F.R. § 404.1572. If a claimant averaged more than $ 500 per month for work performed between January 1990 and June 1999, then it will ordinarily show that he has engaged in substantial gainful activity. 20 C.F.R. § 404.1574(b)(2).

The record contains evidence that McCarty's courier job paid $ 25.00 per day, five days per week. (Tr. 165, 209). This averages out to over $ 500 per month. Moreover, in 1995-1996, McCarty made $ 600 per month playing guitar. (Tr. 42). The record does not indicate how often he played the guitar in 1998-1999. (*See*, Tr. 42).

9

**(10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 1st day of May, 2007.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE